IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Constance J. Pollock,  :

    Plaintiff,  :

  v.  :    Case No. 2:11-cv-581

State Farm Mutual Automobile  :    JUDGE ALGENON L. MARBLEY
    Insurance Company,    Magistrate Judge Kemp

    Defendant.  :

OPINION AND ORDER

This insurance case is before the Court for a ruling on defendant State Farm Mutual Automobile Insurance Company's motion for a protective order. The motion relates to a Rule 30(b)(6) notice of deposition served by plaintiff Constance J. Pollock and an associated document request. For the following reasons, the motion for a protective order will be granted.

I.

The basic facts of this case are simply stated. Ms. Pollock was involved in a rear-end collision in 2009. She suffered a back injury. State Farm insured the driver of the car, and Ms. Pollock qualified as an "additional insured" under the policy.

Ms. Pollock sought and obtained medical treatment following the accident. She submitted over $47,000.00 in bills to State Farm. It refused to pay them in full. The unpaid bills related to "lap band" surgery which was designed to help Ms. Pollock lose weight. State Farm refused to pay those bills because, in its view, that surgery was not related to the accident. Ms. Pollock takes the opposite position, and has sued not only for payment of the bills, but for compensatory and punitive damages based on State Farm's alleged bad faith in denying the claim.

The parties have agreed that both discovery related to the bad faith claim, and the trial of that issue, should be deferred until after a decision is made on the coverage issue. However, they apparently do not agree on where to draw the line between discovery relating to coverage and discovery relating to bad faith. Ms. Pollock has served a Rule 30(b)(6) deposition notice on State Farm which includes topics which, State Farm argues, relate only to the bad faith claim. The same issue exists with respect to a document request which accompanied the deposition notice. When the parties could not work out their differences on this matter, State Farm filed its motion for a protective order. Responsive and reply memoranda have also been filed, and the motion is now ready to decide.

II.

According to the motion for a protective order, the only topics at issue are topics (c), (e), and (f) contained in the Rule 30(b)(6) deposition notice and items (d), (f), and (g) of the document request. State Farm describes these six items as relating to four different topics:

> (1) State Farm's "policies and procedures" with respect to the handling or adjustment of other claims for medical payments coverage;
>
> (2) "Goals, objectives, or targets" established by State Farm with respect to medical payment coverage claims from 2007 through 2012;
>
> (3) "Bonus or other incentive programs" for State Farm employees connected to the attainment of "goals, targets, or objectives" with respect to claims for medical payments coverage; and
>
> (4) Criteria used for evaluating the performance of State Farm's employees for the handling of other medical payment coverage claims.

State Farm's Motion for Protective Order, Doc. 32, at 7-8. State

Farm asserts that none of these topics relate to the breach of contract claim, which, reduced to its essence, involves a determination of whether the bills submitted for the surgery which Ms. Pollock underwent were, under the terms of the policy, "reasonable medical expenses incurred, for bodily injury caused by accident ...." That, State Farm says, is an objective inquiry involving medical testimony about the relatedness of the lap band surgery and Ms. Pollock's back injury, and information about how State Farm compensated its employees based on their claims performance would shed no light on the coverage issue (but might well be relevant to the bad faith claim).

In her opposing memorandum, Ms. Pollock does not disagree that this information relates to her bad faith claim; she alleges that State Farm had a program in place which rewarded employees who were able to settle insurance claims at less than market value, and therefore encouraged employees to deny even legitimate claims in order to earn bonuses. However, she argues that this information also relates to the credibility of State Farm's witnesses. In her words, "[t]he jury cannot properly weigh the credibility of any State Farm witness without knowing what corporate incentives, if any, may be influencing their testimony." Memorandum in Opposition, Doc. 34, at 5. She also analogizes this case to an ERISA benefits case where, even though bad faith claims may not be asserted, the Courts have routinely allowed discovery on the issue of whether the decision-maker is subject to bias in favor of the employer or the plan, and against the claimant. Id. at 4-5, citing, inter alia, Myers v. Prudential Ins. Co. of America, 581 F.Supp. 2d 904, 906-07 (E.D. Tenn. 2008).

While this is a creative argument, the Court agrees with State Farm that any motives which its claims employees might have had to deny Ms. Pollock's claim are not relevant to the coverage

issue - something which Ms. Pollock appears to concede - and that the issue of credibility she has raised is nothing more than the question of motive phrased in different words.  A case like this one involves construction of the insurance contract - often done by the Court without reference to extraneous evidence, and almost never an issue where a witness' credibility is a deciding or even a relevant consideration - and expert testimony about the relationship between a bodily injury and a medical procedure.  As to the latter issue, there are, of course, some cases where expert testimony is not needed, such as "[w]hen it is a matter of common knowledge that a certain act may produce injury," see LeForge v. Nationwide Mut. Fire Ins. Co., 82 Ohio App. 3d 692, 700-01 (Clinton Co. 1992), but that is not the situation here, nor would any such testimony likely come from State Farm employees.  The Court cannot conceive of any way in which a decision on the issue of the relationship between Ms. Pollock's injuries and her lap band surgery would turn on the credibility of any testimony to be given by State Farm's own employees, unless those employees were being offered as experts (if they have the requisite medical training) on the relatedness issue. If that were to occur, State Farm would, of course, be required to make a disclosure under Fed.R.Civ.P. 26(a)(2)(B), at which point discovery on credibility issues might become relevant - but only as to those witnesses who would be offering such testimony, and not as to witnesses who will simply be testifying pursuant to a 30(b)(6) deposition notice.

The same holds true for testimony about what the policy language means.  Ordinarily, it is for the Court to construe language in an insurance policy, and to do so based either on the policy language or certain legal rules of contract construction. As one Ohio court has explained it, if

> [[t]he language of this policy is not ambiguous ... the

> case turns on the application of the language of the
> policy to the facts... [and] no testimony [is] needed
> to explain the plain meaning of the language used.
> Even if the policy language [is] ambiguous, it is the
> court that must decide what it means, based on well
> known rules construing the language against the drafter
> of the policy. <u>Faruque v. Provident Life & Acc. Ins.
> Co.</u> (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d
> 949, syllabus. No help is needed from the insurer in
> this regard.

<u>West American Ins. Co. v. Sluder</u>, 119 Ohio App. 3d 211, 215 (Hamilton Co. 1997). So it is very unlikely that the Court's decision about what the policy means would be influenced in any way by testimony from State Farm employees; rather, the likelihood is that they would not even be competent witnesses on this issue.

State Farm has cited several cases from Florida that are almost squarely on point. <u>See, e.g., Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.</u>, 268 F.R.D. 692 (S.D. Fla. 2010). That case did leave open the possibility that this type of information might be relevant if it had impeachment value, but, of course, impeachment evidence is relevant only to the extent that a witness has testified to some fact which is material to the Court's decision. Again, it does not appear at this time that the particular witnesses to whom this type of evidence applies, namely the State Farm employees who processed this claim, will be offering any evidence material either to the issue of what the policy says and means about the relatedness of medical expenses to an injury, or whether the required degree of relatedness exists. If that should change, the Court can, of course, revisit this issue, but as things stand now, the Court agrees with State Farm that the topics in the Rule 30(b)(6) notice and the document request which State Farm has identified in its motion as being at issue are irrelevant to the breach of contract part of the case.

Since that is so, State Farm is entitled to a protective order at this time.

III.

For the reasons set forth above, the motion of defendant State Farm Insurance Company for a protective order (#32) is granted.

IV.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge